HV_memo_of_law_in_supp_of_MTD_D1_102413.doc

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------

**HENRY VARGAS,**

                                **Plaintiff,**

                -against-

**CARL E. PERSON,**

                                **Defendant.**

-------------------------------------------------------------------

**13 CV 4699 (KBF)**

**MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION TO DISMISS COMPLAINT**

      This memorandum of law is submitted by Defendant Carl E. Person in support of his motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6), F.R.Civ.P.

**Background**

      The Plaintiff is a twice-convicted forger and defrauder who finished one jail sentence a few years ago and is nearing the end of a second jail sentence.  The activities directed by Vargas against his father's four properties is another instance of forgery, deception and fraud.

      I represented the father's four real estate corporations (each a New York corporation doing business only in New York) in negotiations with the Plaintiff in a foreclosure action commenced against the four corporations by a lender (CFA/Archer) who thought it was lending money to the four corporations but was actually dealing with Henry Vargas, who had no authority from his father to enter into any refinancing transaction for the corporations.  When the

1

negotiations bogged down, the father put the four corporations into bankruptcy, through Chapter 11 filings done by me.

Henry Vargas had created falsified documents attempting to show that he had the authority to bind the four corporations and received more than $1,000,000 personally from the refinancing of an existing loan to the 4 corporations. The corporations received no benefit (other than paying off of the existing $5,900,000 mortgage loan), but huge detriments in the form of additional $2,900,000 in debt and a substantially higher interest and monthly payments - which refinancing was hidden during the first few months of the unauthorized mortgage through a questionable reserve for automatic payment of the first few monthly payments , followed by the son's failure to continue making the payments. At this point, the father learned about the unauthorized mortgage which was now a lien of record against the four properties owned by the father's four corporations.

The Plaintiff has always been a New York resident and domiciliary and the Plaintiff's allegation that he was a resident of Kissimmee, Florida before being incarcerated is not true. He always had a residence in New York, either in one of the apartments in his father's four adjoining buildings (on West 111th Street, New York, New York) or in Queens, after which he was imprisoned in Watertown, New York.

I.     **THERE IS NO SUBJECT-MATTER JURISDICTION BECAUSE OF THE LACK OF DIVERSITY OF JURISDICTION**

The Plaintiff and Defendant are both domiciled in New York, which prevents diversity of citizenship jurisdiction. There are no federal questions involved in the lawsuit. The result is that there is no subject-matter jurisdiction. A prisoner is assumed to have the domicile which he had before becoming a prisoner, and might be able to show that he intends to reside in the state

where he is incarcerated.  In *Fermin v. Moriarty*, 2003 WL 21787351 (SDNY 2003), the Court held:

> It is well-established that a prisoner does not acquire a new domicile when he is incarcerated in a state different from his previous domicile. Instead, the prisoner retains his preincarceration domicile. *See* 15 James Wm. Moore et al., *Moore's Federal Practice* ¶ 102.37[8][a] (3d ed.1999) (collecting cases). In some jurisdictions, the rule that prisoners retain their former domicile has taken the form of an irrebuttable presumption. *See id.* ¶ 102.37 [8][b]. However, in the Second Circuit, along with three other circuits, the presumption is rebuttable; thus, although a prisoner is presumed to retain his former domicile, he can attempt to demonstrate that he has established a new domicile in his state of incarceration. *See Housand v. Heiman,* 594 F.2d 923, 925 n. 5 (2d Cir.1979) (embracing the "more recent trend ... in the direction of allowing a prisoner to try to show that he has satisfied the prerequisites for establishing domicile in his place of incarceration"); *see also Sullivan v. Freeman,* 944 F.2d 334, 337 (7th Cir.1991)(Posner, J.) ("The presumption is rebuttable—a prisoner might for example decide he wanted to live in another state when he was released and the federal prison authorities might therefore assign him to a prison in that state, and that would be the state of his domicile."); *Jones v. Hadican,* 552 F.2d 249, 251 (8th Cir.1977) ("While retaining the usually valid presumption that a prisoner retains his pre-incarceration domicile, [the rebuttable presumption rule] is sufficiently flexible to allow a prisoner to show truly exceptional circumstances which would justify a finding that he has acquired a new domicile at the place of his incarceration."); *Stifel v. Hopkins,* 477 F.2d 1116, 1126 (6th Cir.1973) ("We recognize the importance of considering physical or legal compulsion in determining whether domicile is gained or lost, but we limit the application of involuntary presence to its operation as a presumption ordinarily requiring more than unsubstantiated declarations to rebut.").

The Plaintiff even attaches to his Complaint a document (dated December 5, 2008) stating that his address is 140 W. 111th Street - Suite B-1, New York, NY 10026 (see Exhibit A, 1st page of the first exhibit to the Complaint).

Vargas does not allege that the supposed Kissimmee, Florida residence has an permanence or that he intends to reside there indefinitely, and he does not even state the supposed address or indicate that he has any existing address in Florida. Instead, it is clear that

the Kissimmee, Florida allegation was added because Vargas (or someone helping him) recognized that there was no diversity jurisdiction and Vargas needed to create a non-existent diversity to be able to have his lawsuit heard in federal court.

He could not use the corporations as plaintiffs because they are New York corporations and are doing business only in New York, and is not authorized anyway to act for them.

## II. THE FRAUD ALLEGATIONS IN COUNTS 1 AND 3 SHOULD BE DISMISSED BECAUSE FRAUD HAS NOT BEEN PLEADED WITH THE REQUISITE DEGREE OF PARTICULARITY AND ARE NOT PLAUSIBLE

Vargas was never my client and I never spoke with him, and was never in his presence other than at a single meeting held in the office of the alleged lender's attorneys on December 5, 2008.

My client was the father, Victor Vargas, and his 4 corporations. Vargas (the son) was not a shareholder of any of the four corporations, and he was not an officer or director of any of the four corporations, although he pretended to third persons that he was involved with his father's four corporations.

The losses suffered by the four corporations were caused by Henry Vargas. He profited from such loss, directly through receipt of $1,100,000 and also by having almost $2,000,000 of the proceeds paid as a partial payment relating to Henry Vargas' concurrent Triangle Building scam.

Vargas has no claim for any loss as an individual, even if he did happen to be an officer of the corporations (which he was not). Officers and shareholders do not have the claim. The claim for loss is with the corporations.

The pleading fails to properly plead any fraud by Defendant as to the Plaintiff because there were never any representations made to the Plaintiff.  The Complaint utterly fails to plead the required elements of fraud [Rule 9(b), F.R.Civ.P.], and the particularity required as to such elements.  Instead, in count number 1 (the "fraud" count), the Plaintiff keeps using the conclusory term "fraud" or "fraudulent" without alleging the elements of fraud.

The elements of fraud required to be pleaded are set forth in *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Incorporated*, 888 F.Supp.2d 431 (SDNY 2012), as follows:

> **IV. APPLICABLE LAW**
> **A. Fraud**
> To recover damages for fraud under New York law, a plaintiff must prove: " '(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant; (2) made for the purpose of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or material omission; and (4) injury.' " "The claim also requires a showing of proximate causation, such that the injury 'is the natural and probable consequence of the defrauder's misrepresentation or ... the defrauder ought reasonably to have foreseen that the injury was a probable consequence of his fraud.' "

The Plaintiff has not pleaded these elements and would not be able to plead them because he had no dealings with me.  He caused the problem for which his father retained me to try to solve for the father, by suing the son.

Both the elements and the particularity required by the Rules and case law are missing, and the First Cause of Action (entitled "Fraud") should be dismissed, together with such part of the alleged 3rd cause of action (entitled "Punitive Damages") to the extent based on alleged fraud.

Also, the fraud allegations are not plausible and should be dismissed pursuant to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1967, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

My accompanying affirmation has collected the relevant parts of the record from the Plaintiff's current conviction, which shows that when filing the Complaint in this court he was also making the same arguments to vacate his criminal conviction. On October 22, 2013, his motion was denied (see Exhibit L to my moving affirmation), with a substantial analysis of the true facts and rejection of the Plaintiff's claim that he was President of his father's four corporations prior to December 5, 2008, the date of the Pre-Negotiation letter agreement.  This decision should be given some preclusive effect.

### III.  THE PUNITIVE DAMAGES (THIRD) ALLEGED CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE IT IS NOT A SEPARATE CAUSE OF ACTION

The third alleged cause of action, entitled 'Punitive Damages") should be dismissed because punitive damages itself is not a cause of action.  It requires a cause of action in which the appropriate allegations are made for punitive damages in addition to other damages. The Complaint's fraud claims should be dismissed, as argued above.  The malpractice claims as alleged (alleged 2nd cause of action) do not support punitive damages.

*Paisley v. Coin Device Corp.*, 5 A.D.3d 748, 750, 773 N.Y.S.2d 582, 583 (2nd Dept. 2004) held:

> We note that no separate cause of action for punitive damages lies for pleading purposes (*see Crown Fire Supply Co. v. Cronin,* 306 A.D.2d 430, 431, 761 N.Y.S.2d 495). Thus, the Supreme Court also should have dismissed the plaintiffs' claim for punitive damages.

### IV.  THE MALPRACTICE CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE THE PLAINTIFF WAS NOT A CLIENT OF THE DEFENDANT

The second alleged cause of action, entitled "Attorney's Legal Malpractice") should be dismissed because Plaintiff was not a client of the Defendant.  I was retained by the father,

6

Victor Vargas, to represent the father's four corporations and to sue the son, Henry Vargas, who had fraudulently entered into a refinancing transaction for the four corporations without the knowledge or authorization of the father, and through forgery of the documentation needed by the lender to support the refinancing.

At a settlement conference, the unauthorized lender required the father and son to sign a so-called pre-negotiation agreement (the letter dated December 5, 2008) as a condition to trying to work out a settlement. I was not representing Henry Vargas at this one meeting on December 5th. I was continuing to represent the father, Victor Vargas and his four corporations.

The December 5th letter (and only that letter, which was prepared by the unauthorized lender), stated that Henry Vargas was signing the letter as President of the four corporations, but that was contrary to fact, and he was not authorized before or after the letter to sign on behalf of any of the four corporations.  He had been a defendant in a suit commenced by me on behalf of his father and the corporations to recover the documents he had falsely created about his relationship with the four corporations, which lawsuit was withdrawn during early December, 2008 after the turnover of the falsely created documents.

The Complaint alleges in ¶ 5:

> *5.* On or about November 25, 2008, Vargas with his Four
> Corps. retained person for the sole purpose to only to represent
> Vargas and his Four Corps., to negotiate. and execute a PreNegotiation
> Agreement (hereinafter "Agreement"), as borrowers, of
> an $8 million mortgage, with Vargas' lender, known as CFA West
> *111 Street, L •. L. C. (hereinafter "CFA"). See Exhibit t "A"*

This allegation is false. The corporations were not his, and he did not retain me to do anything.  I was already the attorney for the four corporations pursuant to my fee agreement with the father and his four corporations.   See the affidavit of the father, Victor Vargas (Exhibit F to the moving affirmation), which states in relevant part:

7

6. The 4 Debtors had a $5.000.000 mortgage from Sovereign Bank (created by a Sovereign Bank refinancing on January 10. 2007) secured by the 4 buildings. and my son (Henry Vargas). without my knowledge or authorization, entered into an $8.000,000 mortgage transaction with CFA. According to the closing papers. the unpaid principal amount of the $5.000,000 mortgage and interest and other expenses were paid off, in the total amount of $4.970.467.21. It is not clear what happened to the rest of the $8.000.000 in CF A loan proceeds. My son guaranteed the loan and is a co-defendant in the action brought by CFA.

7. After months of paid-up interest had expired. no interest was paid by Henry Vargas on the CFA loan. and CFA commenced its foreclosure action.

8. When I found out about the foreclosure action, I retained the undersigned counsel to defend the foreclosure action and to commence a lawsuit against my son, Henry Vargas.

The Plaintiff's claim of "Attorney's Legal Malpractice" alleged in the Plaintiff's second cause of action is not possible to have occurred as to the Plaintiff because the Defendant never represented the Plaintiff but in fact had sued the Plaintiff on behalf of the Plaintiff's father and the father's four corporations.

The Plaintiff's claim of malpractice as to him is not plausible and should be dismissed under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1967, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The generalized claim that I was representing Vargas cannot be accepted as true, and requires further allegations. In addition, as an alleged claim based upon alleged fraud, the Plaintiff has failed to allege fraud with the requisite particularity, and as an alleged malpractice claim the 3-year statute of limitations has expired.  CPLR 214(6).

**V.    THE MALPRACTICE CAUSE OF ACTION
       SHOULD BE DISMISSED BECAUSE THE PLAINTIFF
       WAS NOT A CLIENT OF THE DEFENDANT**

A complaint may be dismissed based on public records.  *Toussie v. Town Board of East Hampton, et al.*, 874 F.Supp.2d 135 (EDNY 2012).  The Court held:

8

**(b)** *Documents Properly Considered In Determining Plaintiffs' Motion to Amend Regarding the Issue of Futility*

In deciding a motion to dismiss pursuant to Rule 12(b)(6), or to amend ***142** pursuant to Rule 15, the court generally may only consider facts stated in the complaint or "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007); *see Gillingham v. GEICO Direct,* 2008 WL 189671, at *2, 2008 U.S. Dist. LEXIS 4169, at *6 (E.D.N.Y. Jan. 18, 2008). A document not appended to the complaint nor incorporated by reference may appropriately be considered if it is a document "upon which [the complaint] solely relies and ... is integral to the complaint," * * * ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] ... which is integral to the complaint, the defendant may produce [it] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure."). "However even a if the document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *DiFolco,* 622 F.3d at 111 (quoting*Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir.2006)).

A district court may also "rely on matters of public record in deciding a motion to dismiss under [R]ule 12(b)(6)." *Parks v. Town of Greenburgh,* 344 Fed.Appx. 654, 656 (2d Cir.2009) (Summary Order) (quoting *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir.1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6).")); *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir.1991) (district court may examine public disclosure documents on 12(b)(6) motion); *see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 217 (2d Cir.2004).

## CONCLUSION

For the reasons set forth above, the Defendant respectfully requests that the Complaint be dismissed.

Dated:   New York, New York
         October 29, 2013

_____
         **Carl E. Person,** *Pro Se*

9